2001 OK CIV APP 48

Allen A. ATWOOD III; Peter M. Atwood; and Philip A. Atwood and Perry A. Atwood, minors by and through their parents and next friends, Peter M. Atwood and Adina A. Atwood, Plaintiffs/Appellants.

v.

Roger M. ATWOOD, Individually and as Trustee of the Allen A. Atwood and Ferne Atwood Trust Dated February 1, 1957, Defendant/Appellee.

No. 94,393.

Court of Civil Appeals of Oklahoma, Division No. 4.

April 3, 2001.

James C. Hodges, Eller and Detrich, Tulsa, OK, for Plaintiffs/Appellants.

Jeffrey D. Hassell, Julie C. Doss, Gable & Gotwals, Tulsa, OK, for Defendant/Appellee.

RAPP, ACTING PRESIDING JUDGE:

¶ 1 The trial court plaintiffs, Allen A. Atwood III, Peter M. Atwood, Philip A. Atwood, and Perry A. Atwood ("Beneficiaries"), appeal an order granting summary judgment in favor of the trial court defendant, Roger M. Atwood ("Trustee"), individually and as Trustee of the Allen A. Atwood and Ferne Atwood Trust dated February 1, 1957 ("Trust"). This aspect of the appeal is reviewed as Part I of this Opinion.

¶ 2 Next, by supplemental appeal, the Beneficiaries appeal the trial court's decision which awarded attorney fees, expenses, and expert witness fees on behalf of Trustee. This aspect of the appeal is reviewed in Part II of this Opinion.

## PART I

## BACKGROUND

¶3 In 1957, Allen and Ferne Atwood established the Trust to pay education and other benefits for the Beneficiaries. They funded the Trust primarily with stock in the AMP company, a publicly traded company. After Allen Atwood died, the Trustee became the active Trustee.

¶4 Roger Atwood and Allen Atwood, Jr. are the children of the Settlors. Allen, Jr. died in 1992. The Beneficiaries Allen Atwood III and Peter Atwood are the children of Allen, Jr. and, at time of trial, were approximately 39 and 42 years of age. The remaining Beneficiaries are the minor children of Peter Atwood. Prior to his death in 1992, Allen, Jr. dealt with the Trustee on behalf of his children.

¶5 In this action, the Beneficiaries have sued Trustee claiming that he mismanaged the Trust by failing to diversify its holdings and that he failed to account to them as Beneficiaries for his actions as Trustee. They also sought his removal as Trustee and damages for losses from the alleged mismanagement.[1]

¶6 The Trustee kept the AMP stock as approximately 70–80% of the Trust's assets until 1998, when much of it was sold. The gist of Beneficiaries' contention is that Trustee breached his duties by failing to diversify and had he done so the Trust's value would have been substantially higher. It was undisputed that the Trust began with a value of approximately $75,000.00, and that on May 4, 1999, the value was approximately $514,591.00. In addition to its present value, approximately $600,000.00 had been distributed to Beneficiaries, or for their benefit, over the life of the Trust. The major recipient was Peter Atwood. One minor was born after the case was filed and the record does not indicate that any distribution has been made for that child as yet.

¶7 Trustee filed a motion for summary judgment. He contended that the Trust instrument precluded liability because it granted Trustee power and discretion to retain any asset for as long as he deems advisable and to make investments without being limited to any rule of law or statute. Next, he argued that he had not violated either the Prudent Man Rule or the Prudent Investor Rule, but in either case the Trust granted authority and discretion beyond those Rules.

¶8 In support of his motion, Trustee submitted the findings of his expert showing that over various time frames, all ending May 4, 1999, the rate of return experienced by the Trust ranged from just under 14% for the longest term to just over 22% for the shortest term. This expert also calculated returns using different scenarios of diversification, including one urged by Beneficiaries. This calculation reflected that the Trust would have realized a value ranging from zero to approximately $354,000.00 compared to the actual value of approximately $514,000.00.[2]

¶9 Beneficiaries countered with their own experts. These experts opined that the failure to diversify increased the risk to the Trust and reduced the present value of the Trust by approximately $440,00.00 and cost the Trust $1,696,000.00 in future value. Further, Beneficiaries pointed to the return of the AMP stock as being only 8.75% during the five years prior to the suit being filed. They compared this return to the much greater return from other Trust assets and to other indices. They concluded that Trustee violated his duties as Trustee and his responsibilities under the Oklahoma Prudent Investor Act. Last, they maintain that Trustee failed to use the skills he possessed, and that he used for his own investments, for the benefit of the Trust.

1. The summary judgment dealt only with the claim of mismanagement but the judgment decree complies with 12 O.S. Supp.2000, § 994(B). Moreover, the Trustee resigned during the proceedings and accountings were tendered. The sole question in Part I of this Opinion relates to the summary judgment deciding that Beneficiaries had no claim for mismanagement and damages. Trustee claimed an attorney fee and fees from the Trust, having previously never taken any fee for services as Trustee. These questions are discussed in Part II of this Opinion.

2. One scenario advocated by Beneficiaries, if followed, would have resulted in the trust having a zero balance in the late 1970's.

¶ 10 In summary, under the Trustee's scenario the portfolio, as a whole, outperformed the scenario proposed by Beneficiaries and, at the same time distributed substantial sums. The Beneficiaries argued that their evidence shows that, had the Trustee diversified, the present and future values of the Trust would have been substantially higher and that the Trust has lost substantial future value. In response, Trustee asserted that regardless of the outcome of his investment choices and his decision to retain the AMP stock, the Trust document not only gave him unlimited discretion but also exonerated him from liability for claims such as urged by Beneficiaries. The trial court sustained Trustee's motion for summary judgment. Beneficiaries appeal.

## STANDARD OF REVIEW

¶ 11 The appellate standard of review in summary judgment is *de novo. Kirkpatrick v. Chrysler Corp.,* 1996 OK 136, ¶ 2, 920 P.2d 122, 124. This means without deference. *Hulett v. First Nat. Bank & Trust Co. in Clinton,* 1998 OK 21, 956 P.2d 879; *see Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The pleadings and evidentiary materials will be examined to determine what facts are material and whether there is a substantial controversy as to one material fact. *Sperling v. Marler,* 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group,* 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the nonmoving party. *Carmichael v. Beller,* 1996 OK 48, 914 P.2d 1051. Even though the facts may not be controverted, if reasonable persons may draw different conclusions from these facts summary judgment must be denied. *Bird v. Coleman,* 1997 OK 44, 939 P.2d 1123. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. *N.C. Corff Partnership, Ltd. v. OXY, USA, Inc.,* 1996 OK CIV APP 92, 929 P.2d 288. When genuine issues of material fact exist summary judgment should be denied and the question becomes one for determination by the trier of fact. *Brown v. Oklahoma State Bank & Trust Co. of Vinita,* 1993 OK 117, 860 P.2d 230; *Flowers v. Stanley,* 1957 OK 237, 316 P.2d 840. Because the trial court has the limited role of determining whether there are any such issues of fact, it may not determine fact issues on a motion for summary judgment nor may it weigh the evidence. *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

¶ 12 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When a defendant moves for summary judgment without relying upon an affirmative defense the defendant must show: 1) that no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) that the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pacific R.R. Co.,* 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd., Japan,* 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid,* 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946. On the other hand, when the defendant relies upon an affirmative defense then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant. *Akin v. Missouri Pacific R.R. Co..,* 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044.

## ANALYSIS AND REVIEW

¶ 13 This Court views the Trustee's motion for summary judgment as a two-sided attack upon the Beneficiaries' claim: one involving breach of trust duty by a failure to diversify, and the second one being more complex and involving affirmative defenses of exoneration and authorization.

### Summary Judgment Predicated Upon Beneficiaries' Claims

¶ 14 The first aspect of the Trustee's motion examines the elements of Beneficiaries' claim of breach of trust duty by failure

to diversify. This claim challenged the prudence and advisability of Trustee's actions, who admits that he retained a single asset in the Trust as its principle investment and only minimally diversified its portfolio. Trustee sought to demonstrate in regard to this lack of diversification under the Trust that no action exists because the performance of the Trust, including its distributions, equaled or excelled the performance which conservative diversification under either the Prudent Man Rule or the Prudent Investor Rule would have produced. Under this theory, whether the trust instrument provided for exoneration or authorization for acts by the Trustee is immaterial.

¶ 15 The Trustee, as a moving defendant, is not required to negate the Beneficiaries' claims or theories in order to prevail. Trustee, through his expert, made the requisite showing in his motion for summary judgment that: 1) no substantial factual controversy exists as to at least one fact essential to Plaintiffs' theory of the cause of action; and, 2) the fact is in Defendant's favor. However, the Beneficiaries' introduction of evidentiary materials, through their experts, contradicting Trustee's report in their attempt to establish that evidence is available, justifies a trial of the issue. Therefore, summary judgment does not lie as to the first issue-breach of trust on failure to diversify.

### Summary Judgment Predicated Upon Trustee's Affirmative Defenses

■ ¶ 16 The problem for the Beneficiaries is, however, that the Trust instrument contains a great deal of language relating to Trustee's authority and discretion, and it is this pivotal issue, in this Court's review, which determines the correctness of the trial court's decision. A trust instrument may enlarge or restrict the statutory powers of the Trustee. *See* 60 O.S. Supp.2000 § 175.61(B); Minn. St. Ann. § 501B.151, Sub. 1(b). When the trust instrument leaves acts to trustee's discretion, the courts will not intervene. *In re Trusts Created by Hormel,* 504 N.W.2d 505 (Minn.App.1993).[3] If a trustee is empowered to do or not to do an

act, then the trustee's performance under that power does not give rise to a claim for breach of a statutory or common-law duty which the trust instrument has altered. *Id.; see Bank v. Bank Lbr. Co.,* 1975 OK CIV APP 38, ¶¶ 15–16, 543 P.2d 588, 592.

¶ 17 Beneficiaries argue that even though the Trustee here possesses broad discretion, nevertheless, he does not have unbridled authority to deal with the trust property. *Pipkin v. Pipkin,* 1964 OK 72, 393 P.2d 534; *First Nat'l Bank of Wichita Falls v. Stricklin,* 1959 OK 208, 347 P.2d 652. Both cases were decided under the Prudent Man Rule.

¶ 18 This Court agrees that the general policy statements in those cases represent Oklahoma law then, and now under the Prudent Investor Rule. *See* 60 O.S. Supp.2000, § 175.65. However, those policy statements are not inconsistent with granting latitude and discretion to a trustee, as happened here.

■ ¶ 19 The limits upon all trustees, regardless of the latitude and discretion vested in them by the trust instrument, are of the nature listed in *Robinson v. Kirbie,* 1990 OK CIV APP 45, 793 P.2d 315. Thus, the trustee may not engage in criminal acts, or refuse to perform some trust directive, or engage in egregious conduct, such as fraud or malicious, intentional disregard for the rights of the Beneficiaries. *Id.* at ¶¶ 7–8, 793 P.2d at 318–19. The Beneficiaries here have not alleged or raised any such issues.

■ ¶ 20 Thus, the second aspect of the Trustee's summary motion attack presents the affirmative defenses of authorization and exoneration, both derived from the Trust instrument. Under this theory, the Trustee must demonstrate that no material fact is in issue and that the facts, and all inferences from them, are in his favor and that he is entitled to judgment as a matter of law. In other words, the roles are switched and the Beneficiaries need only show a factual controversy as to at least one fact essential to Trustee's affirmative defenses and that such fact is in their favor.

---

**3.** The Trust was originally drawn by one of the settlors, who was a trust lawyer and the father of the Trustee, a resident of the State of Minnesota, and in accord with Minnesota law.

¶ 21 The Trust instrument was executed in Minnesota on February 1, 1957.[4] Trustee presented a portion of the Trust instrument in support of his motion for summary judgment. This portion does not contain any language of exoneration specifically relieving the Trustee of liability for breach of trust and, therefore, the Trustee has not demonstrated for purposes of summary judgment that he is exonerated from liability for breach of trust, if shown to exist, based solely upon language in the Trust instrument.

¶ 22 However, the question of the Trustee's authorization remains. The part of the Trust instrument provided by Trustee in his Rule 13 materials does state:

### Article VI

The trustee shall have power and authority to do any act or thing reasonably necessary or advisable for the proper administration and distribution of each trust created by this instrument. In order to facilitate the proper administration and distribution of each such trust and except as may be in this Trust Agreement otherwise expressly directed or required, and in extension but not in limitation of any power, right, or discretion conferred upon the Trustee by any present or future statute, decision, or rule of law, and the Trustee is hereby granted power to sell and convey any of the properties or securities comprising said trust without license or approval of any court or person:

1. *To retain cash or other assets*, whether or not of the kind hereinafter authorized for investment, *for so long as they may deem advisable*, and to sell, exchange, mortgage, lease or otherwise dispose of the same for terms within or extending beyond the term of this trust, and to receive from any source additional properties acceptable to them.

2. To invest and reinvest in, or exchange assets for, any securities and properties they deem advisable, including without limiting the generality of the foregoing, common and preferred stocks, *without being limited in the selection of investments by any statutes, rules of law, custom or usage;* and to commingle for investment all or any part of the funds of this trust in any common trust fund or funds now or hereafter maintained by the Trustee.

(Emphasis added.)

¶ 23 Thus, the Trustee clearly possessed broad discretion to retain the AMP asset placed into the Trust by the Settlors. The Trust instrument provided for measurement of his judgment according to what he deemed advisable. Here, the Beneficiaries seek to impose liability upon Trustee based upon what someone else deems advisable. In his affidavit, Trustee expressly claims to have abided by these instructions. Beneficiaries' materials do not refute Trustee's averment thereby failing to meet their burden under summary judgment procedures.

¶ 24 However, the Beneficiaries also claim that whatever the Trustee may deem "advisable" he was nevertheless ultimately to be guided by the Prudent Investor Rule, since 1995, and the "Prudent Man" standard from 1992 to 1995.[5] Diversification is a criterion under either of these Rules. However, Beneficiaries' argument must fail for several reasons.

¶ 25 First, 60 O.S.1991, § 163 (which has not been specifically repealed) states that a trustee may retain in the trust any property originally received without liability for reten-

---

4. The Trust was moved to Oklahoma when Trustee moved into this State. However, the parties do not argue that Minnesota law controls. Moreover, neither party asserts that any language was inserted into the Trust by or on behalf of the Trustee here so as to invoke the provisions of 60 O.S. Supp.2000, § 175.57(F)(1)(b) and (2).

5. Prior to 1995, 60 O.S.1991, § 161, directed the trustee to use a Prudent Man standard and by construction this standard included a duty to diversify. *See* cases collected at 24 ALR3d 730. In 1995, the Uniform Prudent Investor Act (UPIA) became law and this Act specifically requires diversification of investments. 60 O.S. Supp.2000, § 175.63. Beneficiaries have not maintained that the Trustee's duties under Section 175.64 of the UPIA at the inception of the Trust apply here and the UPIA applies only to decisions made after 1995 for then existing trusts. 60 O.S. Supp.2000, § 175.71.

tion of the property.[6] Beneficiaries claim that Trustee breached his trustee's duty by retention of the AMP stock. It is undisputed that the AMP stock in the Trust had been placed there originally by the Settlors and Trustee did not acquire additional AMP stock other than by dividends. Therefore, at least until the enactment of the Prudent Investor Rule in 1995, the statute both authorized retention and exonerated the Trustee for retention of assets originally contributed by the Settlors.

¶ 26 The result would be the same under the law of Minnesota, the domicile of the Settlors and the State where the Trust was originally formed. Minnesota enacted its version of the Uniform Prudent Investor Rule in 1997.[7] The prior Act, the Minnesota Trustee's Powers Act, which is still in force, provides in part:

501B.81. Enumerated powers of trustee

Subdivision 1. Trust Assets. The trustee may retain trust assets until, in the judgment of the trustee, disposition of the assets should be made, without regard to any effect retention may have on the diversification of the assets of the trust. The property may be retained even though it includes an asset in which the trustee is personally interested.

Minn. St. Ann. § 501B.81.

¶ 27 The Minnesota version of the UPIA substantially follows the Uniform Act but adds:

Subdivision 8. Disposal of property. Unless the trust instrument or a court order specifically directs otherwise, a trustee need not dispose of any property, real, personal, or mixed, or any kind of investment, in the trust, however acquired, until the trustee determines in the exercise of a sound discretion that it is advisable to dispose of the property. Nothing in this subdivision excuses the trustee from the duty to exercise discretion at reasonable intervals and to determine at those intervals the advisability of retaining or disposing of property.

Minn. St. Ann. § 501B.151(8).

¶ 28 Thus, the Minnesota statutes provide a parallel to Oklahoma's 60 O.S.1991, § 163 and Oklahoma's UPIA. The Minnesota Court has resolved the apparent inconsistency between the permission to retain and duty to diversify. *In re Trusts Created By Hormel,* 504 N.W.2d 505 (Minn.App.1993). There the Court ruled that the diversification language of the UPIA applied to the initial making of investments by the trustee. The permission to retain property language refers to different assets, those which were originally placed in trust by the settlers. *Id.* at 511–12. The *Hormel* decision also stands for the proposition that when the trustee is vested by the settlor with wide discretion, the court will not intervene. *Id.* at 512.

¶ 29 Next, the Prudent Investor Rule, adopted in 1995, is a "default" rule and "may be expanded, restricted, eliminated, or otherwise altered by the provisions of a trust." 60 O.S. Supp.2000, § 175.61(B). The language of Article VI of the Trust conveys the unequivocal message that the Settlors intended that Trustee not be constrained by the Prudent Investor Rule. The intent of the Settlors, as expressed by the Trust instrument, represents a factor that may be considered when deciding whether and to what extent to diversify. Thus, the Prudent Investor Rule does not make an absolute requirement that the trustee diversify.[8] 60 O.S. Supp.2000, § 175.63.

¶ 30 Finally under summary judgment procedure, the Beneficiaries, needed to and failed to show that at least one fact remained for trial after the Trustee's showing of an affirmative defense. Here, they have attempted to meet this burden through hindsight and by singling out for consider-

---

6. Section 163 states:

A trustee may retain in trust any property originally received into the trust and any substitution therefor without liability for such retention.

7. Minn. St. Ann. §§ 501B.151, 501B.152.

8. Section 175.63 states:

Diversification. A trustee shall diversify the investments of the trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying.

ation the AMP stock performance for the five years prior to filing of this action. The Prudent Investor Rule, upon which Beneficiaries rely, permits neither approach. 60 O.S. Supp.2000, §§ 175.62(B), 175.68.

¶ 31 Therefore, under the applicable standard of review, this Court holds that Trustee demonstrated that he had an affirmative defense of authorization to retain property derived from the Trust instrument and that, statutory rules notwithstanding, he was permitted to retain the AMP stock. Beneficiaries have failed to demonstrate any substantial controversy as to a material fact relevant to Trustee's defense or that such fact is in their favor. Beneficiaries' materials seek to review Trustee's actions by hindsight or by singling out a specific investment and such is not permitted under the UPIA. For the years preceding the enactment of the UPIA, Beneficiaries have failed to demonstrate that any facts exist showing that either 60 O.S. 1991, § 163 or the similar rule in Minnesota does not relieve Trustee of liability for retention of the Settlors' contributed assets, in addition to the relief granted by the language of the Trust instrument permitting retention.

¶ 32 Therefore, the trial court's decree of summary judgment based upon the Trustee's affirmative defense of authorization is affirmed.

¶ 33 Having disposed of the summary judgment issue, this Court next turns to the question of attorney fees, which was presented as a subsequent supplemental appeal in this case but which still retained the same Supreme Court number.

## PART II

### BACKGROUND

¶ 34 Subsequent to the trial court's summary judgment, and while the appeal of that issue was pending, the Trustee applied to the trial court for reimbursement from the Trust for his attorney fees, expenses, and expert witness fees. Trustee also applied for a

trustee's fee but the trial court did not decide that issue instead determined that the appeal should proceed.[9]

¶ 35 The Trustee submitted an application for fees and expenses and presented evidence in support of the rates charged and the reasonableness of the requested amounts. The Beneficiaries, in opposition, assert as their principal contention that the Trustee is not legally entitled to recover the fees and expenses. The Beneficiaries challenged the reasonableness of some portions of the Trustee's attorney's charges and the reasonableness of the expert witness fees.

¶ 36 The trial court adjusted a portion of the claim. The trial court awarded judgment of $7,516.70 to reimburse Trustee for amounts paid by him; $79,909.50 for additional attorney fees and expenses; $23,713.00 and $3,487.20 for expert witness fees for experts utilized in the summary judgment proceedings; and, $3,149.00 as expert witness fee for the expert called in the fee hearing. All sums were ordered to be paid from the Trust. Beneficiaries appeal.

## STANDARD OF REVIEW

¶ 37 This appeal presents a question of law regarding whether Trustee is legally entitled to fees, expenses, and expert witness fees. The appeal also presents a question of the reasonableness of those charges given entitlement and the fact that, because of the outcome of this appeal, Trustee did not prevail on the contention that generated the major portion of the fees and expenses allowed by the trial court.

¶ 38 The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v.*

9. The trial court retains jurisdiction to determine attorney fee and costs issues. Okla. Sup.Ct. Rules 1.22, 1.26(d), 12 O.S. Supp.2000, ch. 15, app. Review of the decision proceeds under the accelerated procedures because the appeal on

the merits also proceeds under that procedure. Okla. Sup.Ct. Rule 1.36(*l*), 12 O.S. Supp.2000, ch. 15, app. The trial court's order complies with 12 O.S. Supp.2000, § 994(A).

*Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

¶ 39 When the appeal raises an issue of the reasonableness of any attorney fees awarded by the trial court, then the standard of review is whether there has been an abuse of discretion by the trial judge. *Green Bay Packaging v. Preferred Packaging,* 1996 OK 121, 932 P.2d 1091; *State ex rel. Burk v. Oklahoma City,* 1979 OK 115, 598 P.2d 659; *In re Estate of Jack Lee Fields,* 1998 OK CIV APP 129, 964 P.2d 955. The appellant must show that the trial court made a clearly erroneous conclusion and judgment, against reason and evidence, before such an award may be reversed. *Green Bay Packaging v. Preferred Packaging,* 1996 OK 121, 932 P.2d 1091; *Broadwater v. Courtney,* 1991 OK 39, 809 P.2d 1310; *Abel v. Tisdale,* 1980 OK 161, 619 P.2d 608; *In re Estate of Jack Lee Fields,* 1998 OK CIV APP 129, 964 P.2d 955.

## ANALYSIS AND REVIEW

### Entitlement

¶ 40 Here, Trustee seeks three categories of reimbursement for litigation-related expenditures: Attorney's fees, expenses incurred by attorneys, and expert witness' fees which are further subdivided into expert fees for services in the litigation and expert fees supporting the attorney fee request. The Oklahoma Supreme Court has recently reaffirmed that the American Rule governs the right of a litigant to recover fees. *Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,*

2000 OK 55, 11 P.3d 162. In *Barnes,* the Court ruled as follows:

> In Oklahoma, the right of a litigant to recover attorney fees is governed by the American Rule. *TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15, 22. This Rule is firmly established in Oklahoma [*Id.*] and provides that courts are without authority to award attorney fees in the absence of a specific statute or a contractual provision allowing the recovery of such fees, with certain exceptions. *Id.* This Court has ruled that exceptions to the American Rule are narrowly defined. *Kay v. Venezuelan Sun Oil Co.,* 1991 OK 16, 806 P.2d 648, 650.

*Id.* at ¶ 46, 11 P.3d at 178–79.

¶ 41 Trustee seeks litigation-related expenses, as opposed to Trust administration expenses or damages that may include attorney fees and the like. Thus, the American Rule governs Trustee's entitlement to these outlays so that entitlement must follow from an exception to the Rule. *See In re Estate of Katschor,* 1981 OK 125, 637 P.2d 855, holding that the attorney's services must benefit the estate, that is, increase the corpus of the estate.

¶ 42 Trustee has advanced two statutory justifications for the award of the attorney fees and the litigation expert's witness fees. They are 60 O.S. Supp.2000, § 175.24(A)(9) and (B)(3) and 60 O.S. Supp.2000, 175.57(D).[10] Trustee also points to language in the Trust document stating that the Trustee has the authority, "To pay all reasonable expenses and charges of the trust".[11]

---

10. 60 O.S. Supp.2000, § 175.24(A)(9) and (B)(3) provides authority for the trustee:

 (A)(9). To employ attorneys, accountants, agents, and brokers reasonably necessary to the administration of the trust estate....

 ....

 (B)(3). A trustee shall have a lien and may be reimbursed ... all advances made for the benefit or protection of the trust or its property and all expenses ... incurred in or about execution or protection of the trust....

 60 O.S. Supp.2000, 175.57(D) provides:

 (D). In a judicial proceeding involving a trust, the court may in its discretion, as justice and equity may require, award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust which is the subject of the controversy.

Here, Trustee did not seek, and the trial court did not award, any fees against the Beneficiaries individually. Moreover, no party offered any argument concerning the propriety of looking solely to the Trust, or partly to individuals and partly to the Trust. This Court observes that there are minors who are beneficiaries and whose interests may have been, at least at this stage, adverse to the adult beneficiaries regarding the placement of the burden of payment.

11. Trustee cited Article IV, page 5, of the Trust document. That section does not make provision for payment of expenses and charges. Language to that effect is found in Article VI, subpart 6, page 6, of the Trust document presented in the summary judgment proceedings. No evidentiary

¶ 43 The Court strictly construes any authority for fees and expenses. *Borst v. Bright Mtg. Co.*, 1991 OK 121, 824 P.2d 1102; *Federal Financial Co. v. Grady County, Oklahoma*, 1999 OK CIV APP 90, 988 P.2d 908. Thus, neither the Trust language nor the provisions of 60 O.S. Supp.2000, § 175.24(A)(9) and (B)(3) provide for recovery of litigation-related expenses. In this regard, the decision in *First Nat'l Bank of Wichita Falls v. Stricklin*, 1959 OK 208, 347 P.2d 652, can be distinguished on the authority of *Borst* because in *First National Bank* the action was to preserve the trust against an attack seeking to cancel the trust there. Here, the action is against the Trustee for alleged breaches of the Trust and for removal so that the outlays are for the benefit of the Trustee as opposed to protection of the Trust.

¶ 44 However, 60 O.S. Supp.2000, 175.57(D), is a specific statute authorizing recovery of litigation-related expenditures, at the discretion of the trial court, in a "judicial proceeding involving a trust." Section 175.57(D) was enacted in 1999 as a part of legislation dealing with trustees and their actions. Laws 1999, ch. 419, eff. June 10, 1999. The context of Section 175.57 clearly shows that the Section serves to eliminate the foregoing distinction because that statutory section relates to the trustee and violations of trust. Moreover, to the extent that *In re Estate of Katschor* requires rejection of attorney fees in the present case, the Statute has changed that result.

¶ 45 The statutory phrase "as justice and equity may require" contained in Section 175.57(D) serves two functions, first as a criterion for entitlement and second, as a measure of the size of the award. Because Section 175.57(D) applies to judicial proceedings the terms "costs", "expenses," and "reasonable attorney fees" are to be considered in terms of such proceedings. Thus, for example, "costs" are the costs authorized by statute, 12 O.S. Supp.2000, § 942.

¶ 46 Therefore, this Court holds that Section 175.57(D) provides a statutory exception to the American Rule. The exception arises when "justice and equity may require" that fees, costs, and expenses be awarded.[12]

¶ 47 The highly subjective phrase "justice and equity" does not state specific guidelines or criteria for use by a trial court or for use by a reviewing court. The phrase connotes fairness and invites flexibility in order to arrive at what is fair on a case by case basis. Hence, general criteria drawn from other types of cases provide nonexclusive guides. These include (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

¶ 48 The role of "justice and equity" in this phase of the inquiry before the trial court is distinct from their role in determining what amount of costs, fees, and expenses should be allowed. For example, the fact that the nature of the case was difficult and required a great deal of effort goes to the amount of the award rather than whether an award should be granted. Thus, the criteria enumerated in *Burk v. City of Oklahoma City*, 1979 OK 115, ¶ 8, 598 P.2d 659, 661, represent the bases for the computation of the award rather than justification for the award.

¶ 49 Trustee put forth six arguments in support of his assertion that "justice and equity require" that the fees of the Trustee be paid. The arguments were:[13]

1. Overall and over time the Trust performed well and provided substantial benefits to the adult Beneficiaries.

2. Trustee has served for years without compensation.

---

material concerning language of the Trust document was presented at the attorney fee hearing.

**12.** The trial court acts as a court of equity in trust matters. *See Faulk v. Rosecrans*, 1953 OK 358, 264 P.2d 300.

**13.** Transcript Record, pp. 140–42.

3. Beneficiaries were informed several times early in the dispute that Trustee would seek expenses and fees for litigation.

4. Assessment of the fees would deter beneficiaries in general from unwarranted litigation.

5. Trustee was not accused of nor found guilty of any fraud, overreaching, or criminal conduct.

6. The result obtained, that is, that the ruling of the trial court was that the Trust performed well and no damages were sustained by Beneficiaries so their claim was summarily adjudicated.

¶ 50 Arguments 2, 3, 4, and 5 do not support Trustee's claim under the facts here. First, Trustee also sought compensation from the trial court and computed his claim retroactively. The questions of the propriety and reasonableness of any fee for the Trustee are not presently before this Court for review.[14]

¶ 51 Next, litigation maintained in bad faith, or unreasonably, is subject to sanctions under 12 O.S. Supp.2000, § 2011, but Trustee has not established here that Beneficiaries have proceeded in a manner which justifies an award as a sanction.[15] Likewise, Trustee has not shown a basis to invoke the equitable powers of the court to award attorney fees, for example, as in cases of abusive litigation practices. *In re Estate of Katschor,* 1981 OK 125, ¶¶ 15–16, 637 P.2d 855, 857; *Winters v. City of Oklahoma City,* 1987 OK 63, ¶ 11, 740 P.2d 724, 726.

¶ 52 Moreover, if the Beneficiaries had engaged in abusive practices, then there must be some additional showing that the Trust, as opposed to the Beneficiaries individually, should bear the financial burden. Here, there are other Beneficiaries who are minors and whose interests in the Trust will be materially affected. They were not separately represented here and they occupy a role

similar to that of an involuntary plaintiff in the trial court.

¶ 53 Last, whether Trustee is guilty of fraud or criminal acts is immaterial. The question presented for review concerned his admitted failure to diversify Trust assets in the face of the Prudent Man and Prudent Investor Rules.

¶ 54 Arguments 1 and 6 are interrelated. In this appeal, this Court has not sustained the Trustee's position that summary judgment was appropriate on the basis of Trust performance and resulting lack of damages. Thus, to the extent that Trustee bases his justification for fees and expenses upon the outcome of the litigation due to Trust performance, Trustee's argument fails.

 ¶ 55 On the other hand, Trustee has adopted the role of a "prevailing party" in general as one justification for the award. In Oklahoma jurisprudence, the concept of "prevailing party" is result oriented. A party prevails who succeeds on the merits of the claim. *Underwriters at Lloyd's of London v. North American Van Lines,* 1992 OK 48, 829 P.2d 978. The prevailing party is the one who has judgment rendered at the conclusion of the action. *Oklahoma Oil & Gas Exploration Drilling Program 1983-A v. W.M.A. Corporation,* 1994 OK CIV APP 11, 877 P.2d 605. Here, Trustee has prevailed on summary judgment, albeit on a different theory than that of overall Trust performance. Clearly, Trustee has prevailed in this appeal, although not on every theory he advanced before the trial court. This Court holds that when a party prevails in a judicial proceeding contemplated by 60 O.S. Supp.2000, § 175.57, then that is sufficient to invoke the discretionary authority granted in Section 175.57(D), so that the trial court may then decide whether justice and equity warrant assessment of fees, expenses, and costs.

 ¶ 56 Beneficiaries argued that Section 175.57(D) cannot apply retroactively.

---

14. The Supplemental Petition in Error lists failure of the trial court to reject the fee request as an issue. However, the trial record before this Court discloses that the matter of Trustee compensation was continued by the trial court without objection. Moreover, the judgment, as authorized for immediate appeal under 12 O.S. Supp.2000, § 994(A), contains no decision re-

garding the Trustee's compensation or the trial court's continuance of that inquiry.

15. Litigation under the Trust Code is subject to the Code of Civil Procedure. 60 O.S. Supp.2000, § 175.23(D).

However, this Court views Section 175.57(D) as a burden-shifting statute in derogation of the American Rule. By analogy to other statutes involving authority to assess attorney fees, Section 175.57(D) relates to procedure and is retroactive. *Qualls v. Farmers Ins. Co. Inc.*, 1981 OK 61, ¶ 2, 629 P.2d 1258, 1259; *Phoenix Fed. Sav. & Loan v. Great Southwest Fire Ins. Co.*, 1979 OK CIV APP 49, ¶¶ 7–8, 603 P.2d 356, 358. Therefore, pursuant to Section 175.57(D), the Trustee here may recover "costs and expenses, including reasonable attorney fees" in an amount that the trial court, in its discretion, determines to be just and equitable.

■■■ ¶ 57 This leaves unresolved the question of what is included within the scope of "expenses." Ordinarily, a party is not entitled to recover expert witness fees as costs in litigation. *Sloan v. Owen*, 1977 OK 239, ¶ 9, 579 P.2d 812, 814. Moreover, costs falling under 12 O.S.1991, § 930, which the court may deem "right and equitable" do not include expert witness fees. *Sloan v. Owen*, 1977 OK 239 at ¶ 13, 579 P.2d at 815.

¶ 58 The case of *Porter v. Tayer*, 1963 OK 176, 385 P.2d 808, involved a contention by a holder of a tax deed that he was entitled to have the taxpayer-landowner tender as "expenses" his personal expenses in obtaining the tax deed and in defending it. The statute there provided that when a landowner-taxpayer sought to set aside a tax deed that person must tender all "costs and expenses." 68 O.S.1961, § 455. The Court there held that the word "expenses" did not include personal expenses of the holder of the tax deed in obtaining or defending the instrument. *Porter v. Tayer*, 1963 OK 176 at ¶ 35, 385 P.2d at 814.

¶ 59 The Oklahoma Supreme Court has distinguished claims for expert witness fees

in cases under the Surface Damages Act from cases involving condemnation. *Andress v. Bowlby*, 1989 OK 78, 773 P.2d 1265. In the latter, the statute specifically authorizes recovery of certain expert witness fees.[16] 66 O.S.1991, § 55(D). The Surface Damages Act directs that cases under that Act are conducted as cases under condemnation, but the Act did not specifically authorize recovery of expert witness fees when it authorized recovery of all court costs including reasonable attorney fees. 52 O.S.1991, § 318.5(F).

¶ 60 In divorce actions the court is permitted to award "reasonable expenses" as may be "just and proper." 43 O.S. Supp.2000, § 110(C). In this context "reasonable expenses" have been considered to include both expert witness fees and attorney fees as an exception to the American Rule. *Hill v. Hill*, 1983 OK 81, 672 P.2d 1149 (appraiser); *O'Connor v. O'Connor*, 1991 OK CIV APP 41, 813 P.2d 544 (attorney fees.)

¶ 61 The apparent conflict in result may be resolved on the basis that when the case involves a court in equity the term "expenses" has been given a more liberal interpretation. In this trust case the trial court sits as an equity court. Therefore, this Court interprets the word "expenses" in Section 175.57(D) to include expert witness fees.

### Reasonableness of Award

■■■ ¶ 62 The issue for review relates to the reasonableness of amounts of attorney fees and expert witness fees awarded by the trial court.[17] The issue may be stated as follows:

Is it just, equitable, and reasonable to award attorney fees and expert witness fees for optional activity, that is the motion for summary judgment, in light of the fact that Trustee, as a result of this Court's

---

16. If the condemnation statute failed to grant such fees and costs, then it would risk failing to pass constitutional muster because the Constitution bans taking of property without just compensation. The statute then provides the property owner the opportunity to receive full compensation unadjusted by expert witness fees.

17. Lawyers seeking an award of attorney fees are required to "present detailed time records to the court and to offer evidence of the reasonable

value for the services performed, predicated on the standards within the local legal community." *Green Bay Packaging v. Preferred Packaging*, 1996 OK 121, 932 P.2d 1091; *Oliver's Sports Center v. National Standard Ins. Co.*, 1980 OK 120, 615 P.2d 291. The criteria for calculation of fees are set out in *Burk v. City of Oklahoma City*, 1979 OK 115, ¶ 8, 598 P.2d 659, 661. Counsel for Trustee presented the attorney fee request in conformity with this rule.

**950**

Opinion, did not prevail upon the theory to which the vast majority of these fees and expenses were devoted?

¶ 63 It is clear that the bulk of the attorney fees was incurred in connection with Trustee's quest for summary judgment on the issue of performance, that is, that the Beneficiaries could not establish their claim because of the Trust's performance over time and that, as a result, there were no damages. A substantial portion of the expert witness fees also were incurred on this aspect of the case. Moreover, had Trustee not obtained summary judgment, then these same legal efforts expended toward summary judgment, along with the presentations of the expert witnesses, would have been utilized to defend against Beneficiaries' claim at a trial on the merits.

¶ 64 In order to reach a decision regarding what will be a reasonable sum to award, the trial court, after conducting a *Burk* hearing, must specifically state in the record the basis and calculation for its determination that the fee awarded is reasonable. *Green Bay Packaging v. Preferred Packaging*, 1996 OK 121, 932 P.2d 1091.[18] Furthermore, in a multifaceted case involving judgment in which only some of the matters authorize attorney fees the court must distinguish, on the record, between the compensable and non-compensable attorney time and effort. *Green Bay Packaging v. Preferred Packaging*, 1996 OK 121, 932 P.2d 1091; *Sisney v. Smalley*, 1984 OK 70, 690 P.2d 1048. The final calculation of the compensatory fee must bear some reasonable relationship to the amount in controversy. *Arkoma Gas Company v. Otis Engineering Corp.*, 1993 OK 27, 849 P.2d 392; *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 1987 OK 16, 737 P.2d 1186.[19] The same

general principles apply when expert witness fees are requested.

¶ 65 The Beneficiaries' contentions are that: (1) There ought to be a division between compensable and non-compensable fees similar to *Sisney v. Smalley*, and (2) The amount granted is excessive.

¶ 66 The circumstances here do not present a case such as *Sisney v. Smalley* where the fees must be apportioned between claims, only one of which carries with it authorization for attorney fees. The underlying claims that Trustee failed to diversify the Trust assets and to account to Beneficiaries each implicate the application of Section 175.57(D). In addition, Trustee's counsel did not apportion time among claims so much as among aspects of the case. These aspects included initial activities following the onset of the dispute, general case administration, and summary judgment preparation. The latter two categories overlapped somewhat to include trial preparation.

¶ 67 On the other hand, the record does reflect that a substantial portion of the claimed attorney fees, as well as a substantial portion of the expert witness fees, were devoted to preparation and presentation of the summary judgment predicated upon Beneficiaries' claims, as opposed to Trustee's affirmative defenses—an unsuccessful endeavor based upon this Court's Opinion.[20]

¶ 68 Thus, instead of a dichotomy based upon compensable and non-compensable claims this case presents a dichotomy based upon successful and unsuccessful, optional pre-trial activities leading up to this Court affirming a summary judgment on one premise out of three presented. As a result, Trustee's counsel, under the trial court's fee judgment would be reimbursed for activity,

18. Here, the trial court's judgment specified only the deductions from the fees as requested. Otherwise the judgment does not specify the facts and computations used to support the award as required under *Burk. Burk v. City of Oklahoma City*, 1979 OK 115 at ¶ 22, 598 P.2d at 663. However, it is clear from the record that the trial court awarded the hours and the hourly rate, less the listed deductions, all as presented by counsel for Trustee.

19. The *Arkoma Gas* case demonstrated that this criterion serves as a check against an unfair result from a simple mathematical calculation. *Southwestern Bell* used the criterion to review whether a case was "overworked."

20. This aspect of the summary judgment was reviewed under Part I above. This Court has determined that summary judgment should not have been granted on this aspect of the case.

partly optional, for which Trustee did not prevail, including the accounting.

¶ 69 In summary, this Court concludes from the record that attorney fees and expert witness fees were incurred in:

1. Preparation and presentation of a summary judgment based upon Trust performance but which was unsuccessful as a result of this appeal;

2. Preparation and presentation of a summary judgment based upon the affirmative defense of exoneration and which also was unsuccessful as a result of this appeal;

3. Preparation and presentation of a summary judgment based upon the affirmative defense of authorization and which was successful as a result of this appeal;

4. Preparation and presentation of the accounting sought by the Beneficiaries, thus making them a "prevailing party" on that issue; and

5. General case administration from onset to hearing on summary judgment. This aspect included trial preparation which duplicated especially Item 1 but which was necessary due to scheduling and the fact that Trust performance was to be a principle element of defense at trial.

■ ¶ 70 Although the trial court did not compute the lodestar fee, the fee granted necessarily accepted the hours and hourly rates sponsored by Trustee's counsel, subject to the adjustments enumerated in the decision.[21] As a result, the attorney compensation and the expert witness fees included payment not only for activity which has proven to be unsuccessful but also for activity, the motion for summary judgment, which was optional in the first instance. This result must be weighed in light of the requirement of Section 175.57(D) that the award be just, equitable, and reasonable.

■ ¶ 71 This Court recognizes that a lodestar fee may be unreasonably high or unreasonably low. *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 1987

OK 16 at ¶¶ 10–12, 737 P.2d at 1189; *Burk v. City of Oklahoma City*, 1979 OK 115 at ¶ 7, 598 P.2d at 660–61. The time and labor spent by the attorney in performing services for which compensation is sought is an important factor to be considered in setting a reasonable fee. However, the time element must be considered in connection with other factors. Fees cannot fairly be awarded on the basis of time alone. *Southwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 1987 OK 16 at ¶ 14, 737 P.2d at 1189; *Burk v. City of Oklahoma City*, 1979 OK 115 at ¶ 7, 598 P.2d at 660–61; *RJB Gas Pipeline Co. v. Colorado Interstate Gas Co.*, 1989 OK CIV APP 100, ¶ 67, 813 P.2d 1, 13–14.

■ ¶ 72 Here, the record fails to demonstrate the necessary findings and computations to support the sums awarded as fees and expenses. The absence of these findings has been made more acute as a result of this Court's decision here. It is well known that appellate courts of this State will not make first instance determinations of disputed fact issues as that is the function of the trial court. *Bivins v. State ex rel. Oklahoma Memorial Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 457.

¶ 73 In order to calculate a just, equitable, and fair fee, including the allowable expenses, the trial court must first compute, on the record, the lodestar fee. Here, that computation shall exclude all fees, including expert witness charges, which were devoted to the optional, unsuccessful summary judgment effort.

¶ 74 Then, pursuant to *Burk*, the trial court may consider additional factors, as applicable, to arrive at the final fee and allowed expenses that the trial court deems just, equitable, and reasonable. This process decides whether the lodestar fee will be increased or enhanced. Enhancement is tied, by definition, to the court's award of attorney's fees as an upward adjustment of the lodestar figure the district court calculated. *Oklahoma Bar Assoc. v. Weeks*, 1998 OK 83, ¶ 21, 969 P.2d 347, 353.

---

21. The lodestar fee is the base fee computed as the reasonable number of hours times the rea-sonable hourly rate. *Burk v. City of Oklahoma City*, 1979 OK 115 at ¶ 7, 598 P.2d at 660–61.

¶ 75 In addition, the trial court may give consideration at this stage to the optional activities involving the unsuccessful theories used in the quest for summary judgment. Where a lawsuit consists of related issues or claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Thus, factors such as whether the optional, unsuccessful activity was necessary, reasonable, or useful to the ultimate outcome of the case may be considered.

¶ 76 On remand the trial court shall determine the proper amount of the attorney's fee award in light of these standards. The final calculation, and the supporting findings, shall also be set forth in the judgment.

### Miscellaneous Charges

¶ 77 The trial court allowed Trustee to recover costs incurred by his attorneys for Westlaw and Internet and miscellaneous office supplies. These items must be disallowed. *Wilson v. Glancy*, 1995 OK 141, 913 P.2d 286, Supplemental Opinion, 1995 OK 141 at ¶ 9, 913 P.2d at 292; *Oklahoma Turnpike Auth. v. New Life Pentecostal Church of Jenks*, 1994 OK 9, ¶¶ 3–4, 870 P.2d 762, 764; *Oklahoma Turnpike Auth. v. New*, 1993 OK 42, ¶ 10, 853 P.2d 765, 767. Under those cases, these items are part of the attorney's overhead rather than "expenses" under Section 175.57(D).

¶ 78 The trial court also granted substantial reproduction costs. The statute on costs permits taxation of reproduction costs only for copies necessarily used at trial. 12 O.S. Supp.2000, § 942(4). As with the other items, these reproduction costs were part of overhead as there was no trial in the action and must be disallowed for the same reason.

### SUMMARY

¶ 79 Section 175.57(D) entitles Trustee to fees, expenses, and expert witness fees as a statutory exception to the American Rule. Nevertheless, any such award must be shown on the record to be just, equitable, and reasonable. This record demonstration must be accomplished by following the *Burk* guidelines and mandate so as to present, in the record, the lodestar fee calculation and the final fee calculation.

¶ 80 Here, the lodestar fee calculation must exclude optional, unsuccessful summary judgment activities, associated expenses, and expert witness fees and costs disallowed by this Opinion. Thereafter, in accord with this Opinion, and utilizing the remaining *Burk* guidelines in conjunction with the general authority specified in Section 175.57(D), the trial court must then calculate the final fee, associated expenses, and expert witness fees it deems to be just, equitable, and reasonable. The trial court's findings and calculations are to be shown in the judgment. Moreover, the trial court must determine, based upon "justice and equity," whether the Trust alone, the adult Beneficiaries alone, or some combination of Trust and adult Beneficiaries or Trust and all Beneficiaries should bear the burden of the sums awarded.

¶ 81 Therefore, the decision of the trial court granting attorney fees, expenses, and expert witness fees is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

### CONCLUSION

¶ 82 The trial court's decision concerning summary judgment based upon the Trustee's affirmative defense of authorization is affirmed, as set out in Part I of this Opinion. The trial court's decision concerning the grant of attorney fees, expenses and witness fees, as set out in Part II of this Opinion, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

¶ 83 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

¶ 84 COLBERT, J. (sitting by designation), concurs, and TAYLOR, J., dissents.

TAYLOR, J., dissenting

¶ 1 I must dissent. I believe the provisions of 60 O.S. Supp.2000 175.57(D) were enacted to give courts discretion in trust proceedings such as this. Here, the record reflects careful scrutiny by the trial judge in awarding attorney's fees and costs. The record also shows the court considered the factual elements required by *Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659. There was no abuse of discretion by the trial judge. To the contrary, the court below should be commended for the professionalism demonstrated in presiding over this complex and difficult case.

¶ 2 Although it is likely the former trustee's attorney made the strategic decisions concerning the defense of this litigation, the majority opinion will leave the former trustee exposed to the potential of personal liability for substantial attorney's fees incurred while successfully defending his actions as trustee. I believe that, under these circumstances, such exposure is not just or equitable.

¶ 3 I would affirm the trial court in all respects.