**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BANCFIRST, Limited Guardian of the
Estate of M.J.H., a minor, by and through
Wes Knight, Vice President and Trust
Officer,

      Plaintiff–Appellant,

v.

FORD MOTOR COMPANY, a Delaware
corporation,

      Defendant–Appellee.

No. 10-6137
(D.C. No. 5:09-CV-00076-L)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

      BancFirst raises three issues on appeal. First, BancFirst contends that the district

court abused its discretion by disregarding the errata and declaration submitted by its

expert witness, William Medcalf. Second, it argues the district court erred by granting

Ford Motor Company ("Ford") summary judgment. Third, it contends that the district

---

      [*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

court abused its discretion by denying BancFirst's Fed. R. Civ. P. 59(e) motion to alter or amend judgment.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

**I**

On March 11, 2007, seven-year-old M.J.H. rode her bicycle into the path of an oncoming Ford F-150 pickup truck driven by Brandon Moore. Although Moore took evasive action, he was unable to avoid hitting the child, who was severely injured as a result of the impact. M.J.H.'s mother, acting individually and on behalf of M.J.H., brought this diversity action against the manufacturer of the truck, Ford.[1] Asserting negligence and product liability theories, she alleged the truck was unreasonably dangerous because it lacked front-wheel anti-lock brakes.

In the course of discovery, Ford deposed Medcalf, an expert witness for BancFirst. Medcalf initially testified that, because he could not determine when Moore cut his steering wheel to the right, he did not know whether front-wheel anti-lock brakes would have prevented the accident. Later in the deposition, however, Medcalf stated categorically that four wheel anti-lock brakes would have prevented the accident. Ford moved for summary judgment after the close of discovery.

---

[1] On September 21, 2009, M.J.H.'s mother filed an assignment of her individual claims to her child and requested the court dismiss her in her individual capacity. The same day, she successfully moved to substitute BancFirst, which had previously been appointed limited guardian of the estate of M.J.H. in a state court proceeding, as party plaintiff.

BancFirst responded by submitting errata and an updated declaration from Medcalf, pursuant to Fed. R. Civ. P. 30(e), contradicting the initial deposition testimony and purporting to show the existence of a genuine issue of material fact.

The district court disregarded both the subsequent errata and declaration and, on the basis of the prior deposition, granted Ford summary judgment. BancFirst then filed a motion to alter or amend judgment pursuant to Rule 59(e), which the district court denied.[2] BancFirst appeals.

## II

"[W]e review a district court's decision to exclude affidavits at summary judgment for abuse of discretion." Michael v. Intracorp, Inc., 179 F.3d 847, 854-55 (10th Cir. 1999). Under Oklahoma law, in order to establish liability under the theory of manufacturer's product liability, BancFirst had to demonstrate, among other things, that the defectively-designed brake system was the cause of the injury—"the mere possibility that it might have caused the injury is not enough." See Kirkland v. Gen. Motors Corp., 521 P.2d 1353, 1363 (Okla. 1974). Similarly, to succeed in its negligence claim, BancFirst had to show Ford had a duty to protect M.J.H. from injury, and that its violation of that duty proximately caused M.J.H.'s injury. See Sloan v. Owen, 579 P.2d 812, 814 (Okla. 1977). Thus, to establish liability under either theory, BancFirst had to show that the absence of

---

[2] BancFirst filed a motion for a new trial and motion to reconsider pursuant to Fed. R. Civ. P. 59(a). Because there was no trial, the district court construed the motion as a Rule 59(e) motion. That characterization is not at issue.

front wheel anti-lock brakes caused the accident.

In order to make that showing, BancFirst solicited the expert opinion of Medcalf, a registered professional engineer. Medcalf testified as follows during his deposition:

Q. In this accident then, if [Moore's] vehicle had four wheel [anti-lock brakes], what would have happened in your opinion?

A. We have an unknown here. In my opinion, the presence of four wheel [anti-lock brakes] would have allowed Mr. Moore to steer the vehicle and more likely than not, he would have missed [M.J.H.]. The unknown is exactly when did he apply his counter steer.

Q. Is that what you are talking about when you say that he would have steered and missed her?

A. Well, he would have been able to steer. He did crank the wheel back to the right. . . . [W]ith functional [anti-lock brakes] on the front wheels, the front wheels would likely have come back up to speed and he would have been able to get some steering force on the front end. With that steering force, he should have been able then to—He would have been able to steer probably in front of [M.J.H.].

Q. But you don't know that for a fact?
. . . .

A. It depends on when he puts his steer in.

Q. You can't state with a reasonable degree of engineering certainty or probability that with four wheel [anti-lock brakes] that this vehicle still would not have hit [M.J.H.] with some portion of the vehicle?
. . . .

A. Basically what I told you is that you are correct. He counter steered somewhere in the skid. We don't know where. But had he counter steered and had the full [anti-lock brakes], he would have had much better ability and much better probability of avoiding [M.J.H.].

(Emphasis added.)

Thus, in his deposition testimony, Medcalf conceded that he did not know precisely when Moore began his counter-steer. Ford accordingly moved for summary

-4-

judgment, asserting that BancFirst "cannot establish that the alleged defect caused this accident." In response, BancFirst sought to alter Medcalf's testimony by submitting an errata sheet and updated declaration pursuant to Rule 30(e). In the updated declaration, Medcalf appeared to back off his deposition testimony, now asserting: "Because Mr. Moore's attention was already in a heightened state and his hands were on the steering wheel, his response time to the yaw, resulting in the initiation of the right steer, would have approximated one-half second [which would have given him time to avoid M.J.H.]." Medcalf's testimony underwent the same convenient renovation in his errata sheet. Despite his deposition statement that "[t]he <u>unknown</u> is exactly when [Moore] did apply his counter steer" (emphasis added), Medcalf asserted that "it is <u>known</u> that [Moore's] counter steer was applied prior to striking [M.J.H.] <u>and in time to avoid striking her</u>." (Emphasis added.)

We have adopted a restrictive view of the changes that can be made pursuant to Rule 30(e), and take a dim view of substantive alteration of deposition testimony:

> We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony. . . . The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

<u>Garcia v. Pueblo Country Club</u>, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) (citations and

quotations omitted). As the district court properly concluded, BancFirst indeed treated the deposition as a "take home examination." Although perhaps not directly contradicting Medcalf's deposition testimony, the errata sheet and declaration submitted by Medcalf substantially qualify his prior statements, and thus make precisely the sort of substantive changes of which we disapprove. For this reason, the district court did not abuse its discretion by disregarding alterations to Medcalf's deposition testimony.[3]

### III

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Garrison v. Gambro, Inc., 428 F.3d 933, 935 (10th Cir. 2005). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]lthough our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).

In his deposition testimony, Medcalf initially conceded that he did not know when Moore began his counter-steer, and therefore could not tell whether anti-lock brakes would have prevented the accident. Later in that same deposition, however, he

---

[3] BancFirst also contends that the district court erred in noting in a footnote that Medcalf's errata sheet was submitted untimely. Because the errata sheet contains impermissible alterations, and thus should be disregarded, its timeliness is immaterial.

categorically stated that four-wheel anti-lock brakes <u>would</u> have prevented the accident.

> Q. My question to you is: Had this vehicle had full wheel anti[-]lock brakes, would the vehicle have been able to come out of that yaw sufficiently to avoid this collision with [M.J.H.]?
> . . . .
> [A]. Yes.
> Q. Is that based on a reasonable degree of engineering certainty?
> A. Yes.

A few questions later, Medcalf repeated this categorical assertion.

> Q. Now, looking at your opinion number five on page two of Exhibit 35, you write: It is my opinion that to a reasonable degree of engineering certainty had the vehicle been equipped with a four wheel anti-lock brake system, it is more likely than not that Mr. Moore would have regained steering capability as he turned the wheels back to the right, allowing him to avoid a collision with [M.J.H.]. Is that still your opinion today?
> A. Yes.

These assertions are crucial. The entire basis of the district court's grant of summary judgment was that, once it denied BancFirst's attempts to alter Medcalf's testimony, "the court [was] left with a failure of proof on [BancFirst's] part," because BancFirst "has no competent evidence that the accident would not have occurred had Moore's truck been equipped with four-wheel ABS." However, in the <u>unaltered</u> deposition, Medcalf asserts that four-wheel anti-lock brakes would have prevented the accident.[4] Even though he appears to contradict himself earlier in the deposition, the evidence viewed in the light most favorable to BancFirst creates a genuine dispute of

---

[4] Contrary to Ford's assertions at oral argument, BancFirst adequately brought this testimony to the district court's attention.

material fact.  Summary judgment was improper.

**IV**

Ford argues that we may affirm the grant of summary judgment on the alternative grounds that Medcalf's proffered expert testimony is inadmissible.  Ford contends the testimony is scientifically unreliable, and thus inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

However, the district court did not make any findings on the record regarding the admissibility of Medcalf's testimony under Daubert.  Because the record is presently insufficiently developed for appellate review of the Daubert issue, we must remand for the district court to consider it in the first instance.  See Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1087-88 (10th Cir. 2000) ("Without specific findings or discussion on the record, it is impossible on appeal to determine whether the district court carefully and meticulously reviewed the proffered scientific evidence . . . ." (quotations and alteration omitted)).

**V**

In light of our reversal of summary judgment, BancFirst's appeal of the denial of its Rule 59(e) motion is moot.

**VI**

We **AFFIRM** the exclusion of the errata and declaration, but **REVERSE** the grant of summary judgment for Ford and **REMAND** for further proceedings consistent with

this order and judgment.

Entered for the Court


Carlos F. Lucero
Circuit Judge